

Deposition of:

## 30(b)(6) Brian Tylisz

*October 3, 2019*

In the Matter of:

## Bartley, Laelonnie v. Blackwell's Automobile Leasing Company,

Veritext Legal Solutions
800.808.4958 | calendar-atl@veritext.com | 770.343.9696

1  question.
2          THE WITNESS:  I'm not aware of any
3  governmental regulation that applies to our portable
4  air compressors for that.
5          BY MR. McMICKLE:
6      Q.  Okay.  When you -- let me see how to say
7  this.  You would agree with me that Sullair intended
8  for, say, the Tier 3 375 compressor that was involved
9  in this accident to be towed on public highways at
10 least between jobsites, correct?
11         MR. BRANTLEY:  Object to the form of the
12 question.
13         THE WITNESS:  Yes.
14         BY MR. McMICKLE:
15     Q.  Okay.  And if there are certain federal or
16 state laws or regulations that would apply and require
17 brakes on the wheels of the compressor, towed under
18 the circumstances that I'm describe -- that I've
19 described, would that be important to Sullair in the
20 design process?
21         MR. BRANTLEY:  Object to the form of the
22 question.  Incomplete hypothetical.  Calls for
23 speculation.
24         THE WITNESS:  They don't apply, so I don't
25 know how to answer your question.

1      A.    Okay.

2      Q.    You said -- do you know who wrote that?

3      A.    No, I don't.

4      Q.    You know why they wrote that?

5      A.    No, I don't.

6      Q.    Do you know if that question was ever

7  answered?

8      A.    No, I don't.

9      Q.    Okay.  So on behalf of Sullair, did Sullair

10  ever determine whether the machine weight dictated

11  that brakes are required for safe towing?

12         MR. BRANTLEY:  Object to the form of the

13  question.

14         THE WITNESS:  Can you repeat the question?

15         BY MR. McMICKLE:

16      Q.    Did Sullair ever determine whether the

17  machine weight dictated that brakes are required for

18  safe towing.

19         MR. BRANTLEY:  Object to the form.

20         THE WITNESS:  Not that I'm aware of.

21         BY MR. McMICKLE:

22      Q.    Would safe towing be something that is of a

23  absolute importance to Sullair?

24         MR. BRANTLEY:  Object to the form of the

25  question.

1    in determining whether or not the new machine weight

2    of the iT4 machine dictated that brakes are required

3    for safe towing?

4         MR. BRANTLEY: Object to the form.

5         THE WITNESS: Well, the factors are the

6    difference in complete design, which had -- it was a

7    heavier machine, different size, different center of

8    gravity, all that, and our desire to reduce our SKU

9    count, and provide a streamlined offering to our

10   customers.

11         BY MR. McMICKLE:

12    Q.   Anything else?

13    A.   Not that I'm aware of.

14    Q.   Okay. So did Sullair do any analysis,

15   however slight, of any type, to determine whether the

16   machine weight dictated that brakes were required for

17   safe towing?

18         MR. BRANTLEY: Object to the form of the

19   question.

20         THE WITNESS: Not that I'm aware of.

21         BY MR. McMICKLE:

22    Q.   When did Sullair decide to make brakes a

23   something feature on the iT4 machine?

24    A.   I don't know the date.

25    Q.   Can you give the closest approximation that

1    of the portable air compressor?
2         MR. BRANTLEY:  Objection.  Calls for
3    speculation.  Asked and answered.
4         THE WITNESS:  No.
5         BY MR. McMICKLE:
6    Q.   Will you agree that the 375 family
7    compressor involved in this accident was designed to
8    be towed at highway speeds?
9         MR. BRANTLEY:  Object to the form of the
10   question.  Beyond the scope of the notice.
11        THE WITNESS:  Can you restate the question?
12        BY MR. McMICKLE:
13   Q.   Would you agree that the 375 compressor
14   involved in this accident was designed to be towed at
15   highway speeds?
16        MR. BRANTLEY:  And object to the form of the
17   question, to the extent highway speed is not defined.
18        THE WITNESS:  Yes.
19        BY MR. McMICKLE:
20   Q.   And so it was designed to be towed at
21   highway speeds without brakes, right?
22   A.   Yes.
23   Q.   Okay.  Did Sullair believe it was safe to
24   tow the trailer at highway speeds even though it
25   didn't have brakes?

1  that change anything or any approach that Sullair
2  would take toward this trailer, or toward this air
3  compressor?
4           MR. BRANTLEY:  That's an impossible question
5  to answer as is phrased.  Object to the form of the
6  question.
7           THE WITNESS:  I don't know how to answer
8  your question.
9           BY MR. McMICKLE:
10     Q.   Okay.  I'll ask it this way.  So when
11  Sullair -- Sullair tries to design its products
12  safely, correct?
13     A.   Yes.
14     Q.   All right.  And one of the things that
15  Sullair does when it's trying to design its product
16  safely is taking into consideration the expected or
17  intended uses of the product by the consumer, correct?
18          MR. BRANTLEY:  Object to the form of the
19  question.  Beyond the scope of the notice.
20          THE WITNESS:  To the best we can.
21          BY MR. McMICKLE:
22     Q.   Okay.  And we've already agreed that one of
23  the expected uses of this trailer was to tow it on
24  interstate highway, correct?
25          MR. BRANTLEY:  Object to the form of the

1  question.
2          THE WITNESS:  Yes, to transport it to the
3  jobsite.
4          BY MR. McMICKLE:
5      Q.  Okay.  Do you know why Sullair made brakes a
6  standard feature on the 900 family of compressors in
7  2011?
8          MR. BRANTLEY:  Object to the form.  It
9  exceeds the -- or it's beyond the scope of the notice.
10         THE WITNESS:  No.
11         BY MR. McMICKLE:
12     Q.  Would you agree that manufacturers such as
13 Sullair should do all they can to enhance and improve
14 the safety of its product if it's reasonable to do so?
15         MR. BRANTLEY:  Object to the form of the
16 question.  Beyond the witness' personal knowledge and
17 exceeds the scope of the 30(b)(6) notice.
18         THE WITNESS:  Can you restate it?
19         BY MR. McMICKLE:
20     Q.  Would you agree with me that a manufacturer
21 like Sullair should do all that it can do to enhance
22 and improve the safety of its product if it's
23 reasonable to do so?
24         MR. BRANTLEY:  Object to the form of the
25 question.  Asks for a legal answer, legal analysis,

1  Q.  Okay. And did -- are you aware of anyone ever
2      looking at any kind of analysis or doing any kind of
3      investigation of any type that would suggest that
4      brakes were not necessary for safe towing on a
5      compressor, say, that weighs over 4,000 pounds?
6              MR. BRANTLEY: Object to the form.
7              THE WITNESS: I'm not aware of any such
8          analysis.
9  BY MR. MCMICKLE:
10 Q.  Okay. Now, going back to Exhibit 37, was the highway
11     towable running gear a standard feature on the Tier 3
12     -- excuse me -- the Tier 2 product before it became a
13     Tier 3?
14 A.  When you say "a standard feature," we produced it
15     with or without running gear depending on the
16     customer need.
17 Q.  And that was on the -- you're talking about the Tier
18     2 process?
19 A.  On any product.
20 Q.  Okay. So is it correct to say that -- that with
21     regard to the Tier 3 product that came out of this
22     engineering project that's referenced in Exhibit 37,
23     that brakes were optional, but standard highway
24     running gear was -- was standard, correct?
25 A.  We're still referring to the Tier 3?

1	be associated with not including brakes on the 375
2	family compressor?  It's a very simple question, and
3	you're just not answering it.
4		MR. BRANTLEY:  Object.  It's harassing.
5	It's argumentative.  It was answered, and the
6	answer went well beyond what was just misstated
7	by counsel.  The answer -- answer included
8	information such as all of the variables
9	associated with such a question.  So I just -- to
10	-- to leave that out of --
11		MR. MCMICKLE:  Okay.
12		MR. BRANTLEY:  -- our answer is --
13		MR. MCMICKLE:  All right.
14		MR. BRANTLEY:  -- inappropriate.
15	BY MR. MCMICKLE:
16	Q.	Is there any document you can think of that you would
17	call an assessment of the danger associated with not
18	including brakes on the 375 family compressor?  Is
19	there --
20		MR. BRANTLEY:  Object.
21	BY MR. MCMICKLE:
22	Q.	-- any document you can think of that would -- where
23	the dangers associated with not putting brakes would
24	be discussed or analyzed in any way, however slight?
25		MR. BRANTLEY:  Object to the form of the

1              question.
2                    THE WITNESS:  No document that I know of.
3     BY MR. MCMICKLE:
4     Q.   Good.  Thank you.  Okay.  Thank you.  Item 7 under d.
5          -- 1.d.vii. says "Any communications, internal and
6          external to the company, regarding the inclusion of
7          brakes on the trailers."  I haven't seen any.  Are
8          there any e-mails or communication -- instant
9          messages, maybe -- in any way that you're aware of
10         that would address the decision that you say happened
11         to make brakes a standard feature on the iT4 machine?
12                   MR. BRANTLEY:  Object to the form of the
13              question.  We've looked at a substantial amount
14              of information today.
15    BY MR. MCMICKLE:
16    Q.   I'm asking about communications, internal or
17         external, about inclusion of brakes on the iT4
18         machine.  Do you --
19                   MR. BRANTLEY:  Same --
20    BY MR. MCMICKLE:
21    Q.   -- know -- do you know of any?
22                   MR. BRANTLEY:  Same objection.
23                   THE WITNESS:  There's a lot of communication
24              that talked about inclusion of brakes on the
25              compressors, not the trailers, within everything